IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN JAMES CASSELL,

        Petitioner,

   v.

ANTHONY SANTOS,

        Respondent.

Civil No. 07-6176-BR

OPINION AND ORDER

**MARK BENNETT WEINTRAUB**
Assistant Federal Public Defender
151 W. 7th Ave.
Suite 510
Eugene, OR  97401

    Attorney for Petitioner

**JOHN R. KROGER**
Attorney General
**JACQUELINE SADKER**
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR  97301

    Attorneys for Respondent

1 - OPINION AND ORDER -

**BROWN, Judge.**

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus is **DENIED**, and this action is **DISMISSED**.

## BACKGROUND

On June 2, 1999, a Lane County grand jury indicted Petitioner on two charges of Assault in the Second Degree and one charge of Felony Hit and Run. The indictment arose from a February 25, 1998, incident in which Petitioner struck his neighbors' son with a motor vehicle.

Before trial, the state dismissed a charge of Felony Hit and Run. At the trial, the state's medical expert, Dr. Peterson, testified that the victim suffered injuries to his knee, hip, and sacroiliac joint. With respect to the knee injury, Dr. Peterson testified it was unlikely to prevent the victim from working or cause any other permanent problems. With respect to the sacroiliac injury, however, Dr. Peterson testified that the injury made the sacroiliac joint unstable, a condition which could cause severe, shooting pain in the victim's buttocks, hips, back or thighs, indefinitely.

Dr. Singer, who performed arthroscopic surgery to repair injuries to the victim's knee, agreed with Dr. Peterson that the knee injury was unlikely to prevent the victim from working or

2 - OPINION AND ORDER -

cause other permanent problems.  In a report prepared by Dr. Singer two months after the incident, he concluded that "[a]ll ligaments are stable [in the victim's knee]," and "[h]e has full range of motion of the hip and the ankle.  Respondent's Exhibit (hereafter "Resp. Exh.") 111, p. 2.  Petitioner's trial counsel submitted Dr. Singer's report into evidence, but did not call him to testify.

The jury found Petitioner guilty of one charge of Assault in the Second Degree, finding Petitioner guilty of "recklessly causing serious physical injury to [the victim] by means of a dangerous weapon, a motor vehicle."  Resp. Exh. 114.  The jury was unable to reach a verdict on a second Assault charge.

Petitioner directly appealed his conviction, on grounds unrelated to this habeas corpus action.  The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.  *State v. Cassell*, 175 Or. App. 555, 29 P.3d 626, *rev. denied*, 333 Or. 162, 39 P.3d 192 (2001).

Petitioner then sought state post-conviction relief ("PCR").  In his First Amended Petition for Post-Conviction Relief, Petitioner alleged, *inter alia*, that trial counsel was constitutionally ineffective for failing to call Dr. Singer to testify at trial.  Following an evidentiary hearing, the PCR trial court denied relief.  On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied

3 - OPINION AND ORDER -

review. *Cassell v. Santos*, 211 Or. App. 147, 153 P.3d 712, *rev. denied*, 342 Or. 727, 160 P.3d 992 (2007).

On July 17, 2007, Petitioner filed his Petition for Writ of Habeas Corpus in this court. Petitioner alleges:

> **Ground One:** The trial court erred in denying post-conviction relief where petitioner established that he was prejudiced by his trial counsel's failure to call Dr. Singer as a witness where Singer would have refuted the state's evidence that the victim suffered a "serious physical injury."

Respondent argues Petitioner is not entitled to relief on the merits of his claim.

## DISCUSSION

### I.   Legal Standards

When a petitioner has exhausted his federal claims, this Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court, and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied,* 546

4 - OPINION AND ORDER -

U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006). In conducting its review, the Court "look[s] to the last-reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003), *cert. denied,* 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. *Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)), *cert. denied*, 540 U.S. 968 (2003).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark*, 331 F.3d at 1067). Under the "'unreasonable application clause . . . a

5 - OPINION AND ORDER -

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather that application must be objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)).  When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record."  *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"), *cert. denied,* 534 U.S. 1038 (2004).  Section 2254(d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record.  Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding

6 - OPINION AND ORDER -

was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues . . . . [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court." *Taylor*, 366 F.2d at 1000.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. The Supreme Court's ruling in *Strickland v. Washington*, 466 U.S. 668 (1984) sets forth the "clearly established federal law" governing claims alleging ineffective assistance of counsel. *Williams*, 529 U.S. at 390.

Under *Strickland,* to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) his counsel's

7 - OPINION AND ORDER -

performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687 (1984); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Williams v. Taylor,* 529 U.S. 362, 390 (2000). Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. There is a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* at 689.

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell,* 535 U.S. at 695; *Williams*, 529 U.S. at 390-91; *Strickland,* 466 U.S. at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Williams,* 529 U.S. at 391 (quoting *Strickland,* 466 U.S. at 694).

**II. Analysis**

Petitioner claims trial counsel provided constitutionally ineffective assistance because he failed to call Dr. Singer as a witness at trial. First, Petitioner argues the decision not to call Dr. Singer was objectively unreasonable, because trial counsel's reason for failing to call him as a trial witness had

nothing to do with trial strategy. Instead, Dr. Singer was a close personal friend of trial counsel, who knew Dr. Singer's wife had cancer and who did not want to bother Dr. Singer.

Second, Petitioner argues Dr. Singer's testimony would have altered the outcome of the trial. This claim arises from the jury's finding that the victim suffered a "serious physical injury." Under Oregon law, "serious physical injury" means "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Or. Rev. Stat. § 161.015(8).

Petitioner argues the only basis for the jury's finding of "serious physical injury" must have been the sacroiliac injury, because the experts agreed the knee injury was not permanent or serious. According to Petitioner, Dr. Singer would have testified that the victim's ligaments were stable and that there was no loss of range of motion to the hip. That testimony could have been used to contradict the state's expert, and, thus was critical to Petitioner's defense.

The PCR trial court rejected Petitioner's claim, as set forth the following Findings of Fact and Conclusions of Law:

9 - OPINION AND ORDER -

FINDINGS OF FACT

\* \* \*

2. During the jury trial, petitioner's attorney called five witnesses and submitted 21 exhibits.

3. The jury found petitioner guilty of Assault in the Second Degree. There was ample evidence to support that conviction.

\* \* \*

8. The record contains substantial, credible evidence that the victim suffered serious and permanent injuries to his sacroiliac joint when he was hit by petitioner's truck.

9. Defense counsel's decision not to call Dr. Singer to testify was professionally reasonable. Dr. Singer's report showed that the victim's knee was repaired through surgery and therefore not permanently damaged. The substance of that report was presented to the jury through the testimony of Dr. Peterson, and was highlighted by defense counsel.

10. Dr. Singer's report did not comment on the victim's sacroiliac injury. Therefore, nothing in the Singer report established that the sacroiliac injury was either not serious or not permanent, or that it was a pre-existing injury.

11. Calling Dr. Singer to testify would not have changed or diminished the undisputed evidence that the victim suffered a serious and permanent injury to his sacroiliac joint as a result of his collision with petitioner's truck.

\* \* \*

13. Petitioner's mother, Marjorie Cassell, was not called to testify at the criminal trial below. She did testify as a witness at petitioner's post-conviction trial. Mrs. Cassell testified that petitioner's defense counsel had not called Dr. Singer as a witness . . . because counsel did not

10 - OPINION AND ORDER -

>    want to burden Dr. Singer during a period of time
>    when the doctor's wife was gravely ill.
>
> 14. Mrs. Cassell's testimony did not diminish the fact
>     that Dr. Singer's testimony would have been
>     irrelevant to the question of whether the victim
>     sustained any serious physical injury under ORS
>     163.175(1)(c). Because there was substantial
>     evidence that the victim suffered a serious
>     sacroiliac injury, Dr. Singer's testimony about the
>     victim's knee would have not have had a tendency to
>     affect the outcome of petitioner's criminal trial.
>
> * * *
>
> 28. Throughout the trial, and in preparation therefore
>     [sic], defense counsel provided adequate
>     representation.
>
> * * *
>
> CONCLUSIONS OF LAW
>
> 1. Based on the findings of fact set forth above, in
>    the underlying criminal proceedings resulting in
>    petitioner's conviction, petitioner was not denied
>    the right to assistance of counsel, as guaranteed
>    by either the United States Constitution and as
>    articulated by the United States Supreme Court in
>    *Strickland v. Washington*, 466 U.S. 668 (1984), or
>    the Constitution of the State of Oregon.
>
> 2. Petitioner did not prove any of his post-conviction
>    claims by a preponderance of the evidence.
>
> 3. In all respects, petitioner's defense attorney
>    provided adequate legal representation.

Resp. Exh. 126, pp. 2-7.

Here, Petitioner has not rebutted the PCR court's findings of fact as required by 28 U.S.C. § 2254(e)(1). Petitioner presented no evidence, either in the PCR proceeding or in this court, that

11 - OPINION AND ORDER -

Dr. Singer's testimony would have altered the outcome of the jury trial.

Dr. Petersons' testimony as to the nature of the victim's sacroiliac injury was persuasive and undisputed. He testified that the ligaments of the sacroiliac joint were stretched, rendering the joint unstable. Transcript, Volume II, p. 47. This injury makes certain movements difficult, and could cause "shooting pain" in the thigh and buttock "indefinitely." *Id*. at 48. Dr. Peterson concluded the victim would probably never be able to return to his work as a fire fighter without problems. *Id*. at 48-49.

Petitioner's argument that Dr. Singer could have testified that the victim's hip joint was stable, thus refuting Dr. Peterson's conclusion, is without foundation. Dr. Singer's report mentioned only "full range of motion of the hip and ankle." Resp. Exh. 111, p. 2. It did not mention the sacroiliac joint or injury thereto. In the absence of any other evidence, Petitioner does not demonstrate that there is a reasonable probability that Dr. Singer's testimony would have altered the outcome of the case. As such, Petitioner fails to establish the prejudice necessary to prevail on an ineffective assistance of counsel claim.[1]

---

[1] Having found no prejudice, the court need not consider whether trial counsel's decision not to call Dr. Singer based on his wife's medical condition fell below an objective standard of reasonableness.

12 - OPINION AND ORDER -

The PCR court's denial of relief on Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law.  As such, the decision is entitled to deference, and Petitioner is not entitled to habeas corpus relief.

## **CONCLUSION**

For these reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus and **DISMISSES** this action.

IT IS SO ORDERED.

DATED this ___1st___ day of May, 2009.

                              ___/s/ Anna J. Brown_____
                                  ANNA J. BROWN
                                  United States District Judge